UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JULIA OYEWO,                                        :

                           Plaintiff,               :

             -against-                              :        **MEMORANDUM AND OPINION**

HON. RAY LAHOOD, SECRETARY, UNITED     :             10 Civ. 5139 (KNF)
STATES DEPARTMENT OF
TRANSPORTATION,                                     :

                           Defendant.               :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

Julia Oyewo ("Oyewo") commenced this action pursuant to Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, against the Secretary of the United

States Department of Transportation, alleging employment discrimination, based on race and

national origin, and retaliation. Oyewo contends that, on September 30, 2003, she settled an

employment discrimination action with the defendant, pursuant to which she was promoted to a

K-Band position. She asserts that a "month after the Settlement Agreement was signed, Plaintiff

was ordered by [Jack] Nager and [Sheldon] Gross to relocate her office from the Regional

headquarters at Kennedy Airport to the remote location at Garden City, L.I. (This space was

reserved as a training facility)[.] The reasons given for this most unusual relocation was the lack

of office space at Kennedy." Oyewo alleges "this was obviously pretext" because vacant and

appropriate office space existed at the Regional Office at Kennedy Airport ("ROKA").

According to Oyewo, no personnel were located at the Garden City facility, and "she was so

isolated there that the entire time she was assigned to Garden City, she was the only FAA

1

employee on the whole second floor." Oyewo asserts that, contrary to the terms of her 2003 settlement agreement, which provided for an increase in her duties and responsibilities, her duties and responsibilities "were taken away by Mary Golia and Jack Nager under the guise of a new title which meant very little and offered only minimal authority and often obsolete responsibilities." According to Oyewo, she was reassigned to ROKA "in July 2006, after the lease expired for the space in Garden City."

Upon relocating to ROKA, Oyewo claims she was placed in a "secretarial station-not the requisite office which all other K-Band employees were assigned," and she was "subjected to the humiliation of being mistaken for a secretary." Oyewo maintains that, in response to her immediate supervisor Juaida Norrell's ("Norrell") complaint concerning Oyewo's work space, Oyewo was provided "with a cubical space," which "was so inadequate that it didn't even provide a file cabinet and the materials necessary to be used by the Plaintiff had to be stored in several large boxes." Oyewo asserts that, on or about August 2006, she "sustained a serious injury as a result of one of these boxes falling on her left knee." Moreover, the chair she was given was "dysfunctional and decrepit," and, on or about September 30, 2008, it broke, causing severe injuries to her back, head and spine. Oyewo alleges that all individuals involved in the decisions respecting her claims had knowledge of her "protected participation," in matters related to her previous employment discrimination action, which resulted in the 2003 settlement agreement.

The parties consented to jurisdiction by a United States magistrate judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil procedure. Before the Court is the defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, consisting of a: (1) notice of motion; (2) memorandum of law; (3) Local Civil Rule

56.1 statement of undisputed facts; (4) declaration by Mary Bonsall[1] ("Bonsall"); (5) declaration

by Marie Kennington-Gardiner ("Gardiner"); and (6) declaration by Christine Poscablo, the

defendant's counsel, with numerous exhibits attached to it.  Oyewo opposes the motion with a

memorandum of law.

## UNDISPUTED FACTS

Oyewo is black, Jamaican-American and a native of Jamaica.  She has been employed by

the Federal Aviation Administration ("FAA"), as an engineer, since the early 1990s.  In

September 2003, Oyewo and the FAA signed a Stipulation of Settlement, settling an

employment discrimination action commenced by Oyewo in the United States District Court for

the Eastern District of New York.  The 2003 settlement agreement provided, inter alia, that

"within sixty (60) days," Oyewo be appointed to "the position of Engineer, Job Category:

Engineering, Pay FV, Series 801, Level 5, K-pay Band with an 8% increase over her current pay,

in accordance with FAA policies and procedures, effective October 5, 2003."  The 2003

settlement agreement also provided that Oyewo "will report to the Engineering Center,

Washington, D.C., but the workstation will be located at the Liberty Sector Management facility,

Garden City, Long Island, New York."

From in or about October 2003 to December 2003, Oyewo reported directly to Director

of Facilities Services, Jack Nager ("Nager").  From December 2003, Oyewo reported directly to

Paul Laven ("Laven"), who assigned Oyewo to attend certain training programs and "to dial in

whenever we have team meetings."  A few months after she began reporting directly to Laven,

Oyewo began reporting directly to Susan Knapton ("Knapton"), who, except for giving Oyewo

---

[1] It appears from the parties' submissions that Mary Golia and Mary Bonsall are the same
person.

small writing assignments, had no challenging tasks to assign to Oyewo.  Oyewo testified that

Knapton "was a nice lady but was intimidated by my education and experience; told me she had

nothing to task me with because she herself was not very busy."  Oyewo stated that she had no

problem with these assignments, "but I didn't get any thing [sic] I would have asked a K-Band to

do."  In February 2004, Oyewo was reassigned to a directorate called Air Traffic Control

("ATC") Facilities or AJW-2.

From September 2004[2], to May 2008, Oyewo reported directly to Norrell.  Oyewo was

satisfied with the assignments she received from Norrell, because they were challenging.  Norrell

assigned work to Oyewo without input from others.  The assignments from Norrell consisted of

"A-76 contract" and a presidential mandate.  An A-76 contract "is where the federal government

will look at its workload and decide what they [sic] can give to the outside entity for contractual

obligations that would not impact our mission, which was safety."  A presidential mandate

entails performing tasks required to comply with the FAA's presidential directive "to identify

real estate and other things that we have — real properties within the agency that we will not be

utilizing and turn them over to [the General Services Administration] GSA so that we can lighten

the inventory, probably sell those properties and have some money circulating back into the

agency."  From June 2005 to January 2006, Nager was Oyewo's third-level supervisor.  From

July 2006 to July 2010, Bonsall was Oyewo's third-level supervisor.

In June 2005, Oyewo was transferred from the FAA's Garden City facility to ROKA.  On

the first day Oyewo arrived at ROKA, in June 2005, she was directed to an office, but that office

---

[2] Oyewo stated that she reported to Norrell directly, from September 2004 to May 2008.
Bonsall stated that Oyewo reported to Norrell directly, from February 2004 to May 2008.
Norrell stated that she supervised Oyewo directly, from "2003 or 2004."

was occupied by another employee, Bill DeGraaf.  The following day, Oyewo was provided her current work space.  It has four walls, a window facing outside, a door, a desk, an overhead cabinet, a desk chair, and two additional chairs.  Oyewo does not supervise any employees.

In May 2008, Oyewo began reporting directly to Cornell Collie ("Colllie").  Collie supervised two other managerial K-band employees, one was stationed in Kansas City and the other at headquarters; both worked in cubicles.  Collie assigned work to Oyewo without input from others.  The first task Collie assigned to Oyewo was to draft a statement of work ("SOW") for a shelter replacement project and determine how the agency "can procure shelters for a national contract, through a service order agreement with AML in OK City."  Oyewo started working on that assignment but then became ill and had to take a leave from work.  In order to stay on schedule with the project he assigned to Oyewo, Collie reassigned it to another employee, who was at a lower grade than Oyewo.  In July 2008, Collie assigned Oyewo the task of writing SOWs "for national contracts, one being the tower repair and the other being HVAC installation."

On July 1, 2008, Collie advised his staff of an impending change to the alternate work schedule ("AWS") policy.  He stated that, within the next two pay periods, "all ten hour compressed work days would be eliminated due to the operational demand and to improve the effectiveness of our new organization."  Collie indicated that

> all key role employees (those who have direct support to the field or service area) would have ten hour work days eliminated.  Ms. Oyewo and Mr. Kodsi were both on ten hours days.  However they had an options [sic] of 9/5/4 or straight eight hours. By having an option they could take one day off every two weeks, opposed to one day off every week. . . . [Oyewo] submitted in writing on 7/16/08 a schedule for a 9/5/4 AWS option with one day off every two weeks and she chose Mondays as her day off.

Oyewo was on disability leave from about September 2008 to July 2009.  Upon her return to

work, in July 2009, Oyewo continued working on the two SOWs on which she had been working before going on disability leave.  In March 2010, Collie assigned Oyewo to work on a "decommissioning program," to decommission any system on the agency's real property that is no longer used.  Oyewo worked on that assignment until May 2011, when she took medical leave.

On September 8, 2008, an EEO ("Equal Employment Opportunity") Counselor Report was filed with the Equal Employment Opportunity Commission ("EEOC") Complaints Manager, Office of Civil Rights, Federal Aviation Administration, concerning grievances raised by Oyewo.  Oyewo complained about her assigned duties, namely that she had been "asked to write a national contract for Tower Refurbishment in 1 month equivalent to the TSSC contract which took 40 people and 2 ½ months to write."  According to Oyewo's complaint, she had been given "other assignments and due dates that are unrealistic and not within the scope of [her] abilities." Oyewo alleged she was subjected to a hostile work environment, was removed from the AWS without discussion, and that she believed "Mary Golia is removing the black females from the organization."  The EEO counselor summarized Oyewo's grievances, as follows:

> The aggrieved person wants the same accommodation as other ATO Employees in K-Band status/her peers.  She was put in supposed temporary location but is still there.  It is an enclosed cube that does not have her name or room number and there is no room for her things/equipment.  Mary Golia allegedly stated that the aggrieved person is "fine where she is."  The aggrieved person states that a prior settlement agreement states that her duty station is in the Regional Office Building in Jamaica, Queens, New York, but they agreed to send her to Garden City so long as when she returns she is given the same or better accommodations.  She has yet to receive these accommodations.  In addition, she is given unrealistic work goals, is being asked to cease her AWS, and she believes that Ms. Golia has the intent to remove all A-A employees under her.

On September 26, 2008, Oyewo received a notice of final interview and right to file a complaint of discrimination, informing her, inter alia, that the "complaint must be specific and contain only

those issues discussed with [the EEO counselor]."

On October 18, 2008, Oyewo filed a complaint of discrimination with the Department of Transportation ("DOT"), claiming she was discriminated against by the defendant because she is black, Jamaican, female, fifty-three years old and as a reprisal for her previous "EEO activities." In her DOT complaint, Oyewo alleged that, on August 14, 2008, she inquired about the status of "the permanent space that was part of my EEO settlement since October 2003," but was told that the management in Washington informed the regional administrator "not to prepare a permanent space for [Oyewo] because Ms. Norrell is not my supervisor and had no authority to authorized [sic] permanent space for [her]."  Oyewo alleged in her 2008 DOT complaint, inter alia:

> In the settlement agreement, my duty station is and is still listed as the Eastern Region Headquarters, at Kennedy International Airport, Jamaica, NY.  When the agreement was to be implemented, management objected to me staying at the Regional Office as called out by the agreement and they were willing to pay for my daily commute to Liberty SMO at Garden City, NY.  I did objected [sic] to this arrangement at first because the place where my office was located, I was the only FAA employee on the floor.  What management did was placed [sic] an addendum to the agreement which stated that when I am permanently given an office, it would be same or better.  I had approximately 2,500 square feet all by myself whereas at the time the Regional office was one third empty.  The agency saw it fit to punish me by placing me in isolation and taking all my work away from me. . . . I stayed at liberty SMO for nearly three years, until the leased space for the SMO expired. . . . During this period, I was passed from one supervisor to the next because no one knows what task to assign or was instructed not to give me any assignments. . . . I still live from boxes because the temporary space that I have does not have any cabinet space for my documentations [sic] and books. . . .[O]ther employees in Eastern Region who is [sic] also working for Headquarters . . . have never been through what the Region or my Line of Business is putting me through.  The majority of the employees are white with the exception of one black female; they all have proper offices.  . . . I am the only black female ATO-W employee that is in the New York Regional office having the issues that I have. . . . I do not have an office either; it is only an enclosed cubicle. . . . The other issue that greatly disturbs me is, the Director for ATC Facilities, Mary Golia is on a rampage to remove all her acquired (she did not select any of us) FV-K black females from the organization and replacing [sic] us with white males. . . . Management gave a Position Description for a project that does not exist in the organization for more than six years.  I was passed from one supervisor to another with absolutely no work assignment.  Whenever I

complain, I was appeased by giving a small assignment.  This continues until I had Ms. Norrell as my manager, this is when I started to get "real work." . . . I am given projects with no prior training.  The project is unrealistic for a one-person team and the period of accomplishment is outrageous.  For example, I was ordered to write a national contract for Tower Refurbishment and one for Upgrading and Installation of HVAC's with a time for accomplishment of one month.  My background is engineering.  I am not and was never trained to be a contracting officer. . . .  This is unrealistic and outside my scope of my ability. . . . I have been on the alternate work schedule since 1993 or 1994; this is an option that is offered by the agency as a benefit for recruitment.  I never had any issue with this area before July 2008.  My supervisor Cornell Collie gave one pay period to get off the alternate schedule.

On December 5, 2008, DOT sent a letter to Oyewo concerning her October 18, 2008

complaint, informing her that the following claims had been accepted for investigation:

Were you discriminated against based on race (Black), color (black), national origin (Jamaican), sex (female), age (53 at time of complaint) and retaliation for prior EEO activity when:
1.       Management has failed to provide you with a permanent space at FAA's Eastern Region Office.
2.       You have been denied meaningful work.
3.       You have been assigned work outside the scope of your expertise.
4.       Your supervisor has rescinded your alternate work schedule.

On April 1, 2010, the EEOC, Washington Field Office, entered summary judgment in favor of

the defendant.

## PARTIES' CONTENTIONS

### Defendant's Contentions

The defendant contends that Oyewo did not satisfy the procedural prerequisite of

administrative exhaustion before filing this action with respect to the claim concerning her

placement in the FAA Garden City facility, because she did not raise that claim in her EEO

complaint; rather, she "mentions her placement there only by way of background."  According to

the defendant, none of the four EEO claims accepted for investigation involve her office location

at the FAA Garden City facility.  Moreover, the defendant contends, had the plaintiff raised the

8

claim regarding her placement at the FAA Garden City facility in the EEO complaint, the claim would have been untimely, because she first contacted her EEO counselor on August 20, 2008, more than three years after her June 2005 transfer from the Garden City facility to ROKA.

The defendant argues that the plaintiff cannot establish that she was subjected to any adverse employment action because "an eight or nine-month period during which Plaintiff was not receiving the types of assignments she thought she should have been getting does not constitute a materially adverse change in the terms and conditions of Plaintiff's employment." Moreover, the temporary placement of the plaintiff's belongings "in a secretarial station outside another employee's office," when she was first transferred from the Garden City facility to ROKA, and the assignment of an office space to the plaintiff that is smaller and furnished differently than she would prefer, do not constitute adverse employment actions.

The defendant contends that, even if the plaintiff could establish that she suffered an adverse employment action, she cannot show that the actions about which she complains occurred under circumstances supporting an inference of race, color, or national origin discrimination.  According to the defendant, the plaintiff does not claim that anyone made a remark that could be viewed as reflecting discriminatory animus, and she does not identify any position for which she applied or assignments she believes she should have received that were given to other similarly situated employees of a different race, color or national origin.  The defendant maintains that Marie Gardiner and Bill DeGraaf, whose office space the plaintiff compares to her own space, are not proper comparators because they were not ATC Facilities employees and each was provided the work space "for reasons particular to their jobs."  Rather, the plaintiff's proper comparators are other non-managerial K-Band employees, one in Kansas and the other at headquarters, who were assigned to work in cubicles, office space even smaller \

9

and with less privacy than the plaintiff's work space.

The defendant contends that, with respect to the retaliation claim, the plaintiff failed to establish that she was subjected to any materially adverse employment actions, and she also failed to show a causal link between her protected activity and the alleged adverse actions.  The plaintiff did not show that either Laven or Knapton, her supervisors who she alleges did not give her adequate assignments, even knew about her protected activity, or that Nager and Bonsall were involved in deciding what assignments would be given to the plaintiff.  Furthermore, the plaintiff was assigned the office about which she complains in June 2005, almost twenty-two months after settling her previous EEO claims and the decision not to build an office in response to her request was made in or around July 2008, nearly five years from the date of the settlement agreement.  The defendant maintains that this time gap "is too great for reasonable fact finders to conclude that there was a causal relationship between Plaintiff's EEO activities and the decisions related to what type of office was adequate for Plaintiff's position."  For all these reasons, the defendant argues, summary judgment in his favor is appropriate.

### *Plaintiff's Contentions*

The plaintiff contends the defendant waived his exhaustion of administrative remedies defense to the retaliation claim premised on her assignment to the FAA Garden City facility because the defendant "did not raise the defense in a responsive pleading" and failed to amend his answer.  According to the plaintiff, she raised the issue of the office space assigned to her at the Garden City facility because she documented that "the assignment to [the Garden City facility] and the subsequent struggle to obtain appropriate office space were the same issue—retaliation," and the "issue of the isolated office assignment was explored by the EEOC."

The plaintiff maintains that, providing her with an appropriate office, assigning her to the

10

Garden City facility and the inordinate period of time it took—nearly three years—to approve her move to ROKA, designating a cubicle as her office space, and failing to provide a standard K-Band office space for her "are not separate and distinct acts but are evidence of the singular intent to retaliate against plaintiff for her past protected activity." The plaintiff maintains that all the alleged conduct constitutes an adverse employment action(s). The plaintiff contends:

> As to a causal link between the protected activity and the adverse action, it is clear that there is no daylight between the federal case settlement and the assignment to the isolated Liberty SMO. Further, the delay in reassignment, the designation of secretarial station, the assignment of work and the arbitrary termination of a relied upon flex schedule all flow seamlessly from the singular intent to retaliate against Plaintiff for her audacity in bringing a discrimination claim against defendant.

### Defendant's Reply

The defendant contends that the plaintiff's "claim concerning her office space in the Eastern Region office is simply a different claim than the one she now presses concerning her placement at Liberty SMO." According to the defendant, the plaintiff does not dispute that she agreed to be placed in the FAA Garden City facility as part of the 2003 settlement agreement; her "complaint relates solely to the location of the office on the second floor of the building at Liberty SMO." The plaintiff's "EEO complaint was prompted by an alleged decision by DOT management, in August 2008, to deny Plaintiff's request for a different type of office than the one she has occupied since her transfer to the Eastern Region facility in June 2005." Since this EEO claim is different from the plaintiff's retaliation and discrimination claim based on her placement at the Garden City facility, the defendant maintains that Oyewo failed to exhaust her administrative remedies with respect to her claim concerning her placement at the Garden City facility.

The defendant contends that the plaintiff did not present evidence to establish her claim,

11

and failed to comply with Local Civil Rule 56.1.  As a result, she failed to identify any genuine issue of material fact to be tried.  Moreover, the plaintiff "contends for the first time in her opposition that she was subjected to an adverse employment action when her work schedule was changed 'for no apparent reason.'"  According to the defendant, he will be prejudiced if this claim is considered, since it was never raised in this action, although it was raised in the EEOC complaint.  The defendant maintains that, even if this claim is considered, the plaintiff failed to identify any evidence that would show that the challenged conduct occurred under circumstances supporting an inference of race, color, or national origin discrimination.  Additionally, the plaintiff's contention, that the actions about which she complained "flow seamlessly from a singular intent to retaliate against Plaintiff," does not constitute admissible evidence establishing that anyone involved in the alleged conduct acted with retaliatory intent.

## DISCUSSION

### *Legal Standard*

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56 (c)(1).

"The court need consider only the cited materials, but it may consider other material in the record."  Fed. R. Civ. P. 56(c)(3).  A moving party "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  "All

reasonable inferences must be construed in the nonmoving party's favor, and if 'there is any

evidence in the record from any source from which a reasonable inference in the [nonmoving

party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'"

Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (quoting R.B. Ventures, Ltd. v. Shane,

112 F.3d 54, 59 (2d Cir. 1997)).  "Conclusory allegations, conjecture, and speculation, however,

are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400

(2d Cir. 1998).

 The Local Civil Rules of this court provide that a party making a motion pursuant to Rule

56 of the Federal Rules of Civil Procedure shall file "a separate, short and concise statement, in

numbered paragraphs, of the material facts as to which the moving party contends there is no

genuine issue to be tried," and the papers of the party opposing the motion "shall include a

correspondingly numbered paragraph responding to each numbered paragraph in the statement

of the moving party."  Local Civil Rule 56.1.  Moreover, "[e]ach statement by the movant or

opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement

of material fact, must be followed by citation to evidence which would be admissible, set forth

as required by Fed. R. Civ. P. 56(c)."  Local Civil Rule 56.1(d).  The defendant submitted a

Local Civil Rule 56.1 statement to the Court; the plaintiff did not.

### *Title VII Retaliation*

 Although the plaintiff asserted Title VII discrimination claims in her EEOC complaint,

she is pursuing only Title VII retaliation claims in this action, since she asserts no facts in support of the Title VII claims of discrimination based on race and national origin.  Title VII provides that it is unlawful for an employer to discriminate against an employee because he "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

To establish a Title VII retaliation claim, a plaintiff must show: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."  Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010).  To constitute an adverse employment action for purposes of Title VII, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)).  Examples of adverse employment actions are "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  Id. (quoting Crady, 993 F.2d at 136).  Once the plaintiff establishes a prima facie case, the burden is on the defendant to offer a legitimate, non-discriminatory reason(s) for its action.  See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and

14

retaliatory action." Kaytor, 609 F.3d at 552.  Title VII retaliation claims are subject to the

burden shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05,

93 S. Ct. 1817, 1824-26 (1973).  See id.

### Title VII Exhaustion of Administrative Remedies

"Prior to bringing suit under . . .  Title VII . . ., a federal government employee must

timely 'exhaust the administrative remedies at his disposal.'"  Belgrave v. Pena, 254 F.3d 384,

386 (2d Cir. 2001) (quoting Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998)).  The EEOC

regulations require that an "aggrieved person must initiate contact with a Counselor within 45

days of the date of the matter alleged to be discriminatory or, in the case of personnel action,

within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  A civil action

may be filed by an aggrieved federal employee "[w]ithin 90 days of receipt of notice of final

action taken by a department, agency, or unit, . . . or after one hundred and eighty days from the

filing of the initial charge with the department, agency, or unit" if the agency has not yet

rendered a decision.  42 U.S.C. § 2000e-16(c).  "Nonetheless, claims that were not asserted

before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably

related' to those that were filed with the agency."  Shah v. N.Y. State Dep't of Civil Serv.,

168 F.3d 610, 614 (2d Cir. 1999).  A claim is reasonably related to a claim asserted in the EEOC

complaint if "the conduct complained of would fall within the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge that was made."  Deravin v. Kerik,

335 F.3d 195, 200-01 (2d Cir. 2003) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d

Cir. 2001)).  Moreover, a claim not raised in an EEOC charge may be raised in a civil action

where the complaint alleges: (i) retaliation by an employer against an employee for filing an

EEOC charge; or (ii) "further incidents of discrimination carried out in precisely the same

15

manner alleged in the EEOC charge."  Terry, 336 F.3d at 151 (quoting Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993)).

### Office Location Claim

The defendant asserted a failure to exhaust administrative remedies defense in his answer.  Oyewo failed to exhaust her claim concerning her office location at the Garden City facility because she did not raise it with the administrative agency within the required statutory time frame.  See 29 C.F.R. § 1614.105; 42 U.S.C. § 2000e-16(c).  The September 8, 2008, EEO Counselor's Report does not mention that Oyewo complained about her isolation or lack of work while she was working at the Garden City facility; rather, Oyewo alleged in her interview with the counselor that, although "the settlement agreement states that her duty station is in the Regional Office Building," the parties "agreed to send her to Garden City so long as when she returns she is given the same or better accommodations."  Oyewo's claim that the agency punished her by placing her in isolation and taking her work away from her during the time she worked at the Garden City facility, from October 2003 to June 2005, is not reasonably related to the EEOC claim that the defendant failed to provide her with a permanent work space that would be the same or better than the space she had in the Garden City facility.  Isolating Oyewo and taking away work from her in the Garden City facility is not conduct that would fall within the scope of the EEOC investigation which would reasonably be expected to grow out of the charge that the defendant failed to provide a permanent work space to Oyewo that would be the same or better than the space she occupied in the Garden City facility.

Oyewo does not satisfy the retaliation exception to the exhaustion requirement by alleging retaliation in her complaint, because placing Oyewo in the Garden City facility was not a materially adverse action by the defendant; rather, it was a legitimate action to which Oyewo

consented when she signed the 2003 settlement agreement.  Although Oyewo alleged in her

EEOC complaint that the defendant "placed an addendum to the agreement which stated that

when I am permanently given an office, it would be the same or better," she failed to provide

evidence of any addendum or agreement with the defendant that would demonstrate that the

defendant agreed to transfer Oyewo from the Garden City facility to ROKA, or that the Garden

City facility was not contemplated by the 2003 settlement agreement to be her permanent work

location.  Oyewo failed to submit a Local Civil Rule 56.1 statement or any evidence that would

rebut the undisputed facts recited above or show that a genuine issue of material fact exists to be

tried concerning her Garden City facility office location claim.  Accordingly, Oyewo's claim

concerning the Garden City office location is barred, as unexhausted and, alternatively, fails as a

matter of law because Oyewo failed to provide any evidence that placing her in the Garden City

facility, pursuant to the 2003 settlement agreement, "was obviously pretext," as she alleged in

her complaint.

### *Job Duties Claim*

Oyewo asserts that her duties and responsibilities were taken away by Bonsall and Nager.

The undisputed evidence demonstrates that neither Bonsall nor Nager, the plaintiff's third-level

supervisors, had any impact on the assignments Oyewo received from her direct supervisors.

The evidence shows that, although she was not satisfied with them, Oyewo did not have

problems with the assignments she received from Laven and Knapton.  It appears that the work

that needed to be performed, during the period Oyewo was supervised by Laven and Knapton,

was of such a nature that it did not provide challenging opportunities to either Oyewo or her

supervisors.  Oyewo provided no evidence that would support any causal connection between the

assignments she was given by Laven and Knapton and her participation in her prior employment

discrimination action, or that Laven and Knapton acted with retaliatory intent when they assigned work to Oyewo.  Oyewo was satisfied with the assignments she received directly from Norrell, from 2004 to May 2008.

The plaintiff's allegation that she was "offered . . . . obsolete responsibilities," without more, is not sufficient to sustain her burden of showing that she was denied meaningful work and that the duties and responsibilities she had constitute an adverse employment action. According to Oyewo's testimony, the SOWs and decommissioning program that Collie assigned her were not meaningless or obsolete responsibilities, but were demanding assignments— corresponding to her position—that she discharged competently.  The only gripe Oyewo had with Collie's assignments is that some of the SOWs she prepared were not used by the defendant subsequently.  However, that some of the SOW recommendations Oyewo prepared were not used subsequently by the defendant, without more, does not constitute "obsolete responsibilities," and does not amount to an adverse employment action.  Oyewo failed to provide any evidence to show that the defendant acted with retaliatory intent and that a genuine issue of material fact exists in connection with her job duties and responsibilities claim.  Having failed to show that the assignments she received constitute a materially adverse employment action and that the defendant acted with retaliatory intent, Oyewo's job duties claim fails, as a matter of law.

### Office Space

The evidence shows that the only reason Oyewo was transferred from the Garden City facility to ROKA was the expiration of the lease on that property.  Oyewo provided no evidence to support her contention that the defendant "placed an addendum to the agreement which stated that when I am permanently given an office, it would be the same or better" as the space in the

18

Garden City facility.  The undisputed evidence demonstrates that Oyewo's work space contains

walls, a window facing outside, a door, a desk, an overhead cabinet, a desk chair and two

additional chairs.  The undisputed evidence also shows that two other K-Band employees

supervised by Collie work in cubicles, although they are not located at ROKA.  Nothing in the

record supports the contention that assigning Oyewo her current work space constitutes an

adverse employment action or creates a genuine issue of material fact respecting the claim that

Oyewo's current work space was assigned to her with retaliatory intent.

> In her memorandum of law, submitted in opposition to the motion, Oyewo contends:
>
> > When asked under oath whether any other K-Band employee whose work station
> > was located at the Regional headquarters were assigned a cubicle or a standard office
> > space, Mary Golia Bonsall related that according to the data prepared by Defendant
> > on office space, office rank and demographics, in the Eastern Regional headquarters
> > facility, Plaintiff was the only K-Band employee who did not have such an office.
> > The record of investigation includes the fact that even some J-Band employees were
> > given a standard office.

However, a memorandum of law is not evidence, see Giannullo v. City of New York, 322 F.3d

139, 142 (2d Cir. 2003), and Oyewo provided no admissible evidence to support these

contentions, as required by Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule

56.1.  Even assuming that some other K-Band employees at ROKA were given standard offices,

that fact alone would not be able to establish that giving Oyewo her current work space is an

adverse employment action, or that a causal link exists between Oyewo's current work space and

her protected activities in the previous employment discrimination litigation.  Moreover, no

evidence was presented by Oyewo creating a genuine issue of material fact respecting the

defendant's retaliatory intent in assigning work space to her.  Oyewo's dissatisfaction with her

work space and her allegations of retaliation are insufficient to create a genuine issue of material

fact in connection with Oyewo's office space claim.  Accordingly, this claim must be dismissed,

19

as a matter of law.

### *Alternate Work Schedule*

In the complaint, Oyewo did not raise a claim that her alternate work schedule was terminated with discriminatory intent, but she raised it, for the first time, in her memorandum of law in opposition to the defendant's motion. Oyewo contends in her memorandum of law that "she had a flex schedule which allowed her to work extended hours and be off on Fridays," and that the defendant "[a]rbitrarily, and under the circumstances . . . which speak to a discriminatory intent," terminated her alternate work schedule, and she "was the only employee this new policy affected."

The undisputed evidence demonstrates that, on July 1, 2008, Collie provided notice to his staff that the alternate work schedule consisting of "ten hour compressed work days would be eliminated due to the operational demand and to improve the effectiveness of our new organization." Collie stated that "all key role employees (those who have direct support to the field or service area) would have ten hour works eliminated," which included Oyewo and Mr. Kodsi. However, all the employees were given the opportunity to use a different alternate work schedule, an opportunity of which Oyewo availed herself. The evidence shows a legitimate reason for changing Oyewo's alternate work schedule existed and that Oyewo was not the only employee affected by the change. Since Oyewo failed to submit any evidence showing that a genuine issue of material fact exists concerning her alternate work schedule claim, this claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment, Docket Entry

No. 25, is granted.

Dated: New York, New York          SO ORDERED:
      March 26, 2012

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

21